☑ Priority
☑ Send
___ Clsd
☑ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT
JUL 25 2005
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| LINDA JORDAN,<br><br>  Plaintiff,<br><br>  v.<br><br>JOANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>  Defendant. | No. CV 04-00926 (SH)<br><br>MEMORANDUM OPINION<br>AND ORDER |

ENTERED
CLERK, U.S. DISTRICT COURT
JUL 26 2005
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the

1

1  defendant has filed the certified transcript of record, and the parties have filed a joint
2  stipulation. After reviewing the matter, the Court concludes that the decision of the
3  Commissioner must be reversed, and the matter remanded for further proceedings.
4
5  On October 20, 2000, Linda Jordan protectively filed an application for a
  period of disability alleging an inability to work since October 20, 2000. [AR 73]
6
7  Plaintiff alleges disability, beginning October 1, 1999, due to a multiple valve infection in
  her heart, arthritis, carpal tunnel syndrome, and a pinched nerve in her back. [AR 82]
8
9  After various administrative procedures, an Administrative Law Judge (ALJ) determined
10 that Plaintiff was not disabled within the meaning of the Social Security Act [AR 25-36],
11 and Plaintiff makes two challenges to that determination.
12       Plaintiff asserts that (1) the ALJ transmuted the disability hearing into a
13 game of chance and thereby committed legal error; and (2) the ALJ did not properly
14 determine that Plaintiff could return to her past relevant work.
15       Plaintiff asserts that the ALJ's determination that Plaintiff could return to her
16 past relevant work ignores the opinions of the medical expert, examining psychologist,
17 and state agency physicians which demonstrate that Plaintiff's mental limitations prevent
18 the performance of her past relevant work. Defendant argues that substantial evidence
19 supports the ALJ's decision that Plaintiff could perform her past relevant work. The
20 Court disagrees.
21       The ALJ, confronted with a conflicted mental health record, called upon the
22
23 services of Dr. Griffin as a medical expert to resolve the ambiguities and inconsistencies
24 in the record. [AR 350-57] After explaining Plaintiff's mental condition to the ALJ based
25 on the evidence before him, Dr. Griffin concluded that Plaintiff has a "paranoid disorder,
26 not a psychotic disorder." [AR 357] In his opinion, Plaintiff could perform simple,
27 repetitive tasks but *only if* her paranoid process was not in place. [Id.] Dr. Griffin testified
28 that the record reflected oscillating assessments of Plaintiff's functioning, [AR 353] and
   that the discrepant impressions Plaintiff gave to various psychiatric examiners are

consistent with paranoid ideation. [AR 355-56] Dr. Griffin completed his testimony by stating that a "fair amount depends on whether or not the claimant has evolved a strategy for managing her paranoidal ideations. She's kept it discrete here. She – apparently her strategy is not to say anything. If that is working, she might be able to work." [AR 357]

The ALJ found the opinion of Dr. Griffin most consistent with the record as a whole,[1] [AR 32] *but* concluded that with appropriate psychiatric treatment, Plaintiff could return to her past relevant work. [AR 25-36] The fundamental error lies in the failure of the ALJ to consider Dr. Griffin's opinion that Plaintiff has an untreated, unpredictable paranoid disorder and in the failure of the ALJ to consider Dr. Griffin's assessment of the record.[2] This is evidenced not only by the ALJ's decision but also by the absence of any inclusion of a paranoid disorder in the ALJ's hypothetical to the Vocational Expert.[3] [AR 359-63] Also not included in the ALJ's hypothetical were the

---

[1] As well as the opinion of the State Agency. [AR 32]

[2] In describing Plaintiff's mental condition based on the evidence before him, Dr. Griffin testified: "This record reflects *oscillating* assessments of this individual's functioning. . . . [I]n January of 2001, the Claimant was seen in a consultative examination in which Dr. Dereka [phonetic] felt that she was – that she had an underlying *psychotic process*. He diagnosed her with *major depressive disorder with psychotic features*, rule out schizoaffective disorder. Elements of that psychotic process included *paranoid ideation*. The Claimant behaved in a fashion that he felt was *paranoid*. . . . This assesses her condition as moderately *severe* at that point. . . . There is a consultative examination at 17/5/02 [sic] by Dr. Dion [phonetic] which he found Claimant to have only minimal symptoms and directly describes her as not having any symptoms suggestive of a psychotic process, eating depressive disorder . . . Finally, there is a more substantial examination – consultive examination done by Dr. Resnick at 20F, 8/16/02, where the Claimant is described as markedly confused, markedly distractible, *frankly paranoid*. . . . The diagnosis of *schizo-affective disorder* and *borderline intellectual functioning*. . . . As it stands now, I believe that it establishes that she has borderline intellectual functioning. I believe that it establishes that she has psychotic disorder." [AR 353-55; emphasis added]

[3] The ALJ's hypothetical set out only Plaintiff's physical limitations: "Let's assume a hypothetical individual now 55 years of age with a GED and the work experience that you've just described. . . . Hypothetical person number one has the limitations described by Dr. Maxwell in his testimony. They were the ability to perform light work, lifting 20 pounds occasionally and 10 pounds frequently, with the avoidance of climbing, balancing, unprotected heights, and dangerous, moving machinery. Only occasional fine manipulation and only occasional pushing and pulling with both the upper and lower extremities. In addition, our hypothetical individual is limited to the

(continued...)

severe medically determinable impairments of a depressive disorder and borderline intellectual functioning - both impairments found by the examining physicians and reviewing doctors. [Id.; AR 26]

Thus, the Court remands for a development of the record as appropriate to accurately determine Plaintiff's complete mental health history and further consideration as to whether Plaintiff meets or equals a Listed mental impairment; and finally to consider whether any mental impairment affects her residual functional capacity (RFC).

Given this record, incomplete as it was, it was unreasonable for the ALJ to find no mental impairment. The medical evidence documents that Plaintiff suffers from medically determinable mental impairments that impose vocational limitations on her ability to function which may preclude not only her past work but all other gainful work activity.

**Development of Record**

The ALJ has an independent "duty to fully and fairly develop the record to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. at 1150.

---

[3] (...continued)
performance of simple, repetitive tasks." [AR 361]

The record, in this case, was not fully and fairly developed as appropriate to accurately determine Plaintiff's complete mental health history, which Plaintiff's counsel, the medical expert, and the ALJ all acknowledged at the hearing.[4]

The earliest mental health evidence in the record is a February 5, 1986 treatment consultation summary from Kaiser Permanente medical group demonstrating that Plaintiff sought psychiatric care from that facility. [AR 157] The diagnosis was panic disorder and schizoaffective disorder. [AR 157] Treatment notes document that the Kaiser Permanente facility requested records from Plaintiff's psychiatric treating doctors in Milwaukee, Wisconsin; [AR 157] however, those records were not obtained.

The record also contains the results of intelligence testing pursuant to a psychological evaluation completed three months prior to Plaintiff's application, dated July 13, 2000, by Dr. Rowzee. The testing results showed that Plaintiff had a favorable IQ score of 71, a performance IQ score of 77, and a full-scale IQ score of 72, [AR 218-20] indicating that Plaintiff was operating in the borderline range of intelligence. [Id.]

The Court finds that the February 5, 1986 treatment consultation summary from Kaiser Permanente medical group and the July 13, 2000 psychological evaluation completed by Dr. Rowzee is not substantial enough to render Plaintiff's mental health history complete, especially when there exists numerous conflicting and inconsistent facts in the record regarding Plaintiff's mental impairments.

---

[4] Plaintiff's counsel stated that "[t]here may be outstanding treatment notes. The claimant has indicated if she's able to obtain them, she'll turn them in as soon as possible." [AR 338] The ALJ responded that he would consider anything brought to his attention before he rendered his decision, [id.] but there was no evidentiary change in the few weeks between the hearing and the issuance of the ALJ's decision.
The medical expert, Dr. Griffin, testified that the "record is made less useful with the absence of the early psychiatric records and by any current psychometrics, including an MPI or a Vaughn [phonetic]. As it stands now, I believe that it establishes that she has borderline intellectual functioning [and a] psychotic disorder. And it's poorly documented in the evidence and it's difficult to ascertain" [AR 354-55] to which the ALJ responded: "Well, recognizing that the record is not complete, I very much doubt that we would be able to obtain 30-year old psychiatric records, anyway. I doubt that they're still in existence, even if we could locate [sic] the successors to whatever facility she was treated in." [AR 355]

For example, Plaintiff testified that she underwent prior psychiatric hospitalizations and electroshock therapy, [AR 343, 346], which history was confirmed by her sister. [AR 133] Dr. Griffin testified that "other documents in the record suggest that the Claimant was psychiatrically hospitalized . . . in 1970 and 1979" and that "at one point she was prescribed Thorazine, a major tranquilizer and anti-psychotic medication." [AR 353] Yet, none of this history is corroborated with medical evidence. [AR 30]

Plaintiff also alleges that she has been treated at Pacific Clinics, [AR 286] though the facility has no record of her. [AR 263] Plaintiff reports that she did not take medication prescribed there because she does not trust the doctors there. [AR 249] Plaintiff also alleges that non-psychiatrist physician, Dr. Nasir, prescribed her Paxil; [AR 286] however, this is not corroborated by Dr. Nasir's records. [AR 221-23]

It was the duty of the ALJ, and not Plaintiff, to conduct an appropriate inquiry into Plaintiff's complete mental health history; that is, obtain the outstanding treatment notes by subpoenaing the documents from Plaintiff's prior physicians.

**Listed Mental Impairment**

A complete mental health history is necessary for the third step of the sequential evaluation process. 20 C.F.R. § 416.920. In the third step, the ALJ compares Plaintiff's medically determinable impairments to the impairments described in the Listing of Impairments. 20 C.F.R. § 404, Subpart P, Appendix 1. If Plaintiff's medically determinable impairments, singly or in combination, meet or equal an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. § 416.920(d).

Based on a complete mental health record (treating, examining and consultative records), the ALJ should be able to find whether or not Plaintiff's mental limitations, whether singly or in combination, meet or equal the criteria of any listed impairment. More specifically, a fully developed record will enable the ALJ to

adequately consider whether Plaintiff meets or equals Listing 12.03: *Schizophrenic, Paranoid and Other Psychotic Disorders.*

### Residual Functional Capacity

If the ALJ finds that Plaintiff's condition does not meet or equal the criteria of a Listed mental impairment after the record has been fully and fairly developed, the ALJ must then turn to the fourth step in the sequential evaluation. The ALJ must decide whether Plaintiff's residual functional capacity permits her to perform her past relevant work,[5] and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. 20 C.F.R. §§ 416.920, 416.966. Plaintiff's capacity for exertional and non-exertional activities will establish the range of work activities that she can perform despite her impairments. In considering all the medical evidence, the ALJ will consider the combined effect of all Plaintiff's medically determinable impairments, regardless of their severity. 20 C.F.R. § 416.923. In addition, the ALJ will consider not only the objective medical evidence, but also Plaintiff's subjective allegations of pain and other symptoms, to the extent that they are credible and are associated with underlying medically determinable impairments. 20 C.F.R. § 416.929.

The record currently contains opinions of consultative examiners and reviewing doctors that the ALJ must also consider when determining whether Plaintiff can return to her past relevant work, or in the alternative, perform other compatible work that exist in significant numbers in the economy.

---

[5] "Past relevant work" is work usually performed within the last fifteen years; in addition, the work must have lasted long enough for Plaintiff to learn to do the job, and it must meet the definition of substantial gainful activity. 20 C.F.R. § 416.965. Plaintiff states that she vaccinated chickens from October 1995 until May 1996. [AR 83] She states she earned minimum wage and worked eight hours a day, five days a week. [Id.] Plaintiff also reports work from June 1996 until November 1996 as a housekeeper at a casino/hotel; she worked eleven hours a day, five days a week, and earned minimum wage. [Id.]

7

In January 2002, Plaintiff was examined by Dr. Parikh, a consultative psychiatrist, who noted no work-related limitations for Plaintiff other than that she could not interact appropriately with co-workers. [AR 248-53] Dr. Parikh recommended Plaintiff see a psychiatrist for consideration of anti-depressant medication. [Id.]

The non-examining State Agency psychiatrist, who reviewed the evidence in April 2001, found numerous moderate difficulties and limitations, but concluded that with appropriate treatment, Plaintiff could perform simple, repetitive tasks. [AR 224-42, 265-82] The State Agency concluded that Plaintiff has mild restrictions of the activities of daily living, mild or moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence or pace. [AR 234, 275]

In July 2002, Plaintiff was examined by Dr. Yang, a consultative psychiatrist, who diagnosed a depressive disorder, not otherwise specified, and opined that Plaintiff can perform simple, repetitive tasks. [AR 296-301]

In August 2002, Plaintiff was examined by Dr. Reznick, a consultative psychologist, who noted "clear evidence of psychotic symptoms." [AR 285-95] He also noted that Plaintiff presented herself as "markedly confused with marked distractibility and evident feelings of frustration." [Id.] He also thought Plaintiff seemed paranoid. [Id.] Dr. Reznick diagnosed a schizoaffective disorder and borderline intellectual functioning. [Id.] In conclusion, Dr. Reznick opined that Plaintiff could perform simple, repetitive tasks and adapt to minor variations in work routine, but would experience "severe problems" with relating to others in the work place and with relating to the general public. [Id.] In addition, he believed Plaintiff could not satisfactorily tolerate ordinary work pressures. [Id.]

**Vocational Expert**

The preferred method of proof, when the medical-vocational guidelines (the grids) are not applicable, is the testimony of a vocational expert. <u>Gonzalez v. Sec. of Health & Human Servs.</u>, 784 F.2d 1417, 1420 (9th Cir. 1986). If the grids cannot be used

8

(as, for example, when non-exertional impairments are present), the testimony of a vocational expert is required in order to support a finding of RFC for substantial gainful activity. <u>Desrosiers v. Sec. of Health & Human Servs.</u>, 846 F.2d 573, 578 (9th Cir. 1999). If the plaintiff suffers from non-exertional limitations not contemplated by the grids, the ALJ is required at step five of the sequential evaluation to call upon a vocational expert to establish whether plaintiff is disabled. <u>Tackett v. Apfel</u>, 180 F.3d 1094 (9th Cir. 1999).

The assumptions contained in the ALJ's hypothetical to the Vocational Expert, if one is required, must be supported by the record; otherwise, the opinion of the vocational expert that Plaintiff has RFC has no evidentiary value. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Hypothetical questions posed to the Vocational Expert must set out <u>all</u> the limitations and restrictions of claimant. <u>Id.</u> at 422 (emphasis in original). The hypothetical questions must be accurate, detailed and supported by the medical record. <u>Gamer v. Sec. of Health & Human Servs.</u>, 815 F.2d 1275, 1279-80 (9th Cir. 1987). The Vocational Expert's response to a hypothetical constitutes substantial evidence only if it is reliable in light of the medical evidence. <u>Embrey</u>, 849 F.2d at 422.

More specifically, if the ALJ finds that, after the record is fully and fairly developed, Plaintiff does have a medically determinable mental impairment, the ALJ must set out <u>all</u> the mental limitations and restrictions in his hypothetical to the Vocational Expert, for an improper hypothetical question cannot serve as substantial evidence under 42 U.S.C. § 405(g) (2005) and can result in a remand or reversal. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984).

///
///
///
///
///

1  Accordingly, the matter is reversed and remanded pursuant to Sentence 4 of
2  § 405(g).
3  
4  IT IS SO ORDERED.
5  DATED: July 25, 2005
6  
7  
8  _____
9  STEPHEN J. HILLMAN
10 UNITED STATES MAGISTRATE JUDGE